**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1844-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAVONNE SCOTT, a/k/a
ALQUAY MCFIELD and
DAVOINNE SCOTT,

    Defendant-Appellant.

_____

Submitted May 27, 2026 – Decided July 31, 2026

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 21-09-1757.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven E. Braun, Designated Counsel, on the brief).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Margaret Myaskovskaya, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Davonne Scott appeals from the January 24, 2025 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. In 2019, defendant beat the victim with a baseball bat into a vegetative state. The victim was placed in a nursing home and died two years later. An autopsy conducted by the medical examiner revealed the cause of death was complications from blunt force head injuries. In June 2022, defendant pled guilty to a downgraded charge of aggravated manslaughter and was sentenced to a fifteen-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant now claims he was denied effective assistance of counsel because his trial counsel: (1) failed to fully investigate potential causation issues and retain a causation expert; (2) did not provide defendant with discovery materials and failed to communicate trial strategies and potential defenses; and (3) failed to advocate for a reduced sentence and did not present all relevant mitigating factors. Defendant also argues in his self-represented submission that he should not have been prosecuted for the victim's death because of the "year and a day rule." After reviewing the record in light of the governing legal principles, we affirm.

A-1844-24

## I.

We presume the parties are familiar with the pertinent facts and procedural history, which we need only briefly summarize. On July 31, 2019, defendant encountered the victim, Darrell Diggs, in a municipal parking lot. Defendant struck Diggs in the head with a baseball bat. Diggs fell to the ground unconscious, bleeding from his nose, ears, and mouth. Defendant walked away and told his girlfriend, Renne Culp, "I just knocked that motherfucker out."

Culp found Diggs lying on the ground and called West Orange Police. The police obtained surveillance video of the incident. Diggs was transported to University Hospital where doctors reported that Diggs suffered massive head trauma and had to undergo surgery. The injuries sustained included multiple skull fractures and a hemorrhage.

Diggs remained unresponsive and was eventually transferred to a long-term care facility for hospice care, where he remained in a vegetative state as his health deteriorated. On April 30, 2021, Diggs was found unresponsive and was pronounced dead. An autopsy conducted by the medical examiner revealed the cause of death to be complications of blunt force head injuries.

In September 2021, defendant was charged by indictment with knowing/purposeful murder, N.J.S.A. 2C:11-3(a)(1)(2) (count one); aggravated

assault, N.J.S.A. 2C:12-1(b)(1) (count two); unlawful possession of a weapon (the baseball bat), N.J.S.A. 2C:39-5(d) (count three); and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four).

On June 16, 2022, defendant pled guilty pursuant to a negotiated agreement to amended count one, downgraded from murder to aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). The record shows that defense counsel proposed the plea deal, which the State agreed to.

During the plea colloquy, defendant admitted under oath that he swung a baseball bat at Diggs's head and that his actions resulted in Diggs's death. Defendant also stated that he was not threatened or forced to plead guilty and that he was satisfied with his trial counsel. On September 30, 2022, defendant was sentenced in accordance with the plea agreement to fifteen years in prison subject to NERA.

Defendant did not file a direct appeal. On May 26, 2023, defendant filed a self-represented PCR petition arguing that his trial counsel was ineffective. On November 15, 2023, defendant's assigned PCR counsel submitted a brief arguing that trial counsel was ineffective because defendant's plea was not voluntarily, knowingly, and intelligently made. Specifically, in his counseled brief, defendant argued that trial counsel failed to assert a causation defense by

A-1844-24

hiring an expert to independently determine Diggs's cause of death and failed to discuss trial strategies and discovery with defendant, instead pressuring him to plead guilty. Defendant also contended that trial counsel should have argued in favor of mitigating factors and argued more forcefully for a lesser sentence. Finally, defendant argued that trial counsel's cumulative errors deprived him of effective assistance of counsel. In a supplemental self-represented brief, defendant further argued that he could not be lawfully charged with murder under the "year and a day rule."[1]

On October 11, 2024, the PCR court heard oral argument during which PCR counsel conceded that the "year and a day rule" did not apply. On January 27, 2025, the PCR court issued a written opinion denying defendant's PCR petition without an evidentiary hearing. The PCR court first found that defendant's causation defense argument was an unsupported assertion because defendant failed to provide a medical expert or expert report to substantiate any potential causation issues. The court further concluded that there was no

---

[1] The year and a day rule was a common-law rule which held that a defendant could not be guilty of murder if the victim died more than a year and a day after their initial injury. State v. Young, 77 N.J. 245, 247 (1978). In Young, the Court abrogated the rule on a prospective basis, id. at 428, and causation in criminal cases is now governed by provisions in our Code. See N.J.S.A. 2C:2-3.

evidence of unforeseen or inadequate medical care in the medical records to support a potential causation defense.

The court also rejected defendant's argument that trial counsel failed to communicate trial strategies and review discovery, because defendant's plea colloquy clearly showed that he was satisfied with trial counsel's performance. In response to defendant's sentencing argument, the court found that trial counsel demonstrated competence and diligence in submitting a sentencing memorandum in which counsel argued in favor of mitigating factors three, eight, nine, and eleven.[2] Noting that defendant in his PCR petition did not specify which additional mitigating factors trial counsel should have argued for, the court held that defendant failed to establish that the mitigating factors outweighed the aggravating factors as to warrant a lesser sentence. Given that trial counsel made no errors, the PCR court also found that the cumulative error doctrine did not apply. Finally, the court held that the "year and a day" rule did not apply.

---

[2] Those factors are: "(3) The defendant acted under a strong provocation;" "(8) The defendant's conduct was the result of circumstances unlikely to recur;" "(9) The character and attitude of the defendant indicate that the defendant is unlikely to commit another offense;" and "(11) The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents." N.J.S.A. 2C:44-1(b) (3), (8), (9), (11).

A-1844-24

This appeal followed.[3] Defendant raises the following contentions for our consideration:

> 1. Defendalt's plea was not knowing, intelligent, or voluntary because trial counsel failed to seek expert testimony to support a causation defense.

> 2. Trial counsel was ineffective for failing to communicate with defendant and discuss discovery and potential trial strategies.

> 3. Trial counsel was ineffective at sentencing.

Following the submission of briefs, defendant submitted a Rule 2:6-11(d) letter bringing to our attention our Supreme Court's recent decision in State v. DiNapoli, 264 N.J. 18 (2026).

## II.

We begin our analysis by acknowledging the legal principles governing PCR petitions, starting with the scope and standard of review. We review a PCR court's legal conclusions de novo. State v. Harris, 181 N.J. 391, 419 (2004). Appellate review "of a PCR court's factual findings is 'necessarily deferential.'" State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (quoting State v. Nash, 212 N.J. 518, 540 (2013)), subject to an important caveat. When as in this case

---

[3] Defendant filed a second PCR petition which was dismissed without prejudice on August 25, 2025, pending the result of this appeal.

A-1844-24

the PCR court does not hold an evidentiary hearing, we review both the factual inferences drawn from the record and any legal conclusions de novo. State v. Balbosa, 481 N.J. Super. 497, 519 (App. Div. 2025). See also Nash, 212 N.J. at 540-41; State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020). Furthermore, when applying de novo review, appellate courts "view the facts in the light most favorable to the defendant." State v. Jones, 219 N.J. 298, 311 (2014).

Case law supports the proposition that appellate courts review a PCR court's decision on whether to proceed without an evidentiary hearing for an abuse of discretion. See Balbosa, 481 N.J. Super. at 519-20 (citing State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023)).[4] However, given

---

[4] Applying an abuse-of-discretion standard to a PCR court's decision to deny a PCR petitioner's request for an evidentiary hearing appears to be in tension with the long-settled rule that we review de novo not only a trial court's interpretation of the law but also the legal "consequences that flow from established facts." State v. Gamble, 218 N.J. 412, 425 (2014). Cf. Balbosa, 481 N.J. Super. at 519 (stating that "we review both the factual inferences drawn from the record and any legal conclusions de novo" and that "[w]e review the PCR court's decision to proceed without an evidentiary hearing for an abuse of discretion."). Arguably, the question of whether a defendant has established a prima facie case in support of PCR—a critical inquiry in determining whether an evidentiary hearing is required—is a question of law, or at least a mixed question, that is, a legal consequence that flows from established facts. See R. 3:22-10(b); see also State v. Preciose, 129 N.J. 451, 462 (1992) (PCR courts "ordinarily should grant

A-1844-24

uncertainty as to the appropriate standard of review of a trial court's decision on whether to hold an evidentiary hearing, we err on the side of caution and review de novo whether defendant in this case has established the grounds for an evidentiary hearing.

Turning to substantive legal principles, PCR serves the same function as a federal writ of habeas corpus. Preciose, 129 N.J. at 459. PCR provides "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" Nash, 212 N.J. at 540 (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). When petitioning for PCR, a petitioner must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. Id. at 541. To meet this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

A defendant alleging ineffective assistance of counsel must satisfy both prongs of the two-part test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by the New Jersey Court in State v. Fritz, 105 N.J. 42 (1987). "First, the defendant must show that

---

evidentiary hearings . . . if a defendant has presented a prima facie [case] in support of post-conviction relief.").

counsel's performance was deficient." Strickland, 466 U.S. at 687. Second, the defendant must show that counsel's "deficient performance prejudiced the defense." Ibid.

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Counsel's performance is held to a standard of "reasonableness under prevailing professional norms." Id. at 688. Stated another way, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Ibid.; see also State v. Marshall, 148 N.J. 89, 156-57 (1997).

The second Strickland prong requires that the petitioner show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. Our Supreme Court emphasized in State v. Gideon that the second prong sets forth "an exacting standard." 244 N.J. 538, 551 (2021) (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed;" rather, "[t]he defendant must 'affirmatively prove prejudice.'" Ibid. (citing Fritz, 105 N.J. at 52, and

10

quoting Strickland, 466 U.S. at 693). Further, to set aside a guilty plea based on ineffective assistance of counsel, a PCR petitioner must demonstrate "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pled guilty and would have insisted on going to trial." State v. Nunez-Valdez, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v DiFrisco, 137 N.J. 434, 457 (1994)).

Short of establishing entitlement to a new trial or to vacate a guilty plea, a PCR petitioner may demonstrate that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. As a general matter, a defendant's claim of ineffective assistance of counsel "is more likely to require an evidentiary hearing because the facts often lie outside the trial record and because the attorney's testimony may be required." Id. at 462. However, a PCR petitioner is not automatically entitled to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(b) provides in pertinent part:

> [a] defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.

A-1844-24

With respect to the first of these three requirements, "[a] prima facie case is established when a defendant demonstrates 'a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)).

III.

We next apply these foundational principles to the present facts, starting with defendant's contention that his plea counsel rendered ineffective assistance by failing to seek expert testimony to support a causation defense. Applying de novo review, we reach the same conclusion as the PCR court: that defendant's argument is nothing more than a "bald assertion[]." Cummings, 321 N.J. Super. at 170. The law is well-settled that "when a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid.

Here, defendant has not identified an expert or provided an expert report attesting that his attack was not the cause of the victim's death. Rather, defendant argues in a conclusory fashion that the victim's autopsy report is inconsistent with the medical examiner's finding that the cause of death was

12

complications of blunt force injuries of the head. Specifically, defendant highlights the medical examiner's finding of no acute traumatic injury and the lack of skull fractures and hemorrhage. Defendant assumes that these findings show that he did not cause the victim's death and speculates that the cause of death was the victim's treatment in the nursing home.

That speculation is inadequate to support any PCR relief, including an evidentiary hearing. When a defendant claims trial counsel was ineffective for failing to hire or retain an expert, they must demonstrate that an independent expert would reach a materially different conclusion from the expert opinion proffered by the State. See Marshall, 148 N.J. at 211 (denying relief because "[d]efendant offers no showing that independent experts would have reached materially different conclusions"). Here, defendant has not provided any certifications to support an alternative conclusion on the cause of the victim's death.[5]

---

[5] DiNapoli, which defendant cites in his Rule 2:6-11(d) letter, is off point. DiNapoli addressed the legal impact of a family's election of palliative care for the ninety-four-year-old car crash victim in a vehicular homicide prosecution. 264 N.J. at 26. In that case, there was a legitimate dispute as to the victim's cause of death in view of three expert opinions proffered by the defendant. Id. at 29-30. We emphasize that in this case, defendant has not presented an expert or expert report.

A-1844-24

We add that a trial counsel's decision not to hire an expert is owed deference. See State v. Chew, 179 N.J. 186, 217 (2004) ("In evaluating whether defense counsel has satisfied the duty to make reasonable investigations, the reviewing court must apply 'a heavy measure of deference to counsel's judgments.'" (quoting Strickland, 466 U.S. at 691)). Where counsel conducts a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is "virtually unchallengeable." Ibid. (quoting Strickland, 466 U.S. at 690-91).

In this instance, at the plea hearing, the trial court engaged defense counsel in the following colloquy:

> The Court: And, [counsel], you are satisfied having reviewed those medical records, yourself, that there is sufficient evidence to support the fact that the victim in this matter, . . . Mr. Diggs, died as a result of the injuries that were sustained on July 21st, 2019 after a prolonged illness?
>
> Counsel: Yes, Judge.
>
> The Court: Well, prolonged medical treatment.
>
> Counsel: Right.

It is clear from this exchange that trial counsel reviewed the discovery, considered the causation issue, and ultimately made a strategic determination not to hire an expert.

14

A-1844-24

As the State aptly notes, moreover, the fact that, at the time of the autopsy, the victim did not show evidence of acute traumatic injury, skull fractures, and hemorrhage does not call into question the medical examiner's conclusion as to the cause of death. The assault occurred two years earlier and required the victim to undergo a craniotomy. Notably, the victim remained in a vegetative state from the time of the brutal assault until his death, during which his health was steadily declining. In these circumstances, defendant has not established that further investigation by his plea counsel would have revealed evidence that would undermine the causal connection between defendant's act and the victim's death. Cf. State v. Pelham, 176 N.J. 448, 465 (2003) (holding that even the removal of a crime victim's life support, "as a matter of law, may not constitute an independent intervening cause for purposes of lessening a criminal defendant's liability").

IV.

We next address defendant's contention that his trial counsel was ineffective for failing to communicate with him. That claim is belied by the record. During the guilty plea colloquy, the following exchange occurred:

> The Court: Are you satisfied with the advice and the assistance that [counsel] has provided to you during this entire process?

15

Defendant: Yes.

. . . .

The Court: Okay. Do you need any more time to speak with [counsel] regarding this matter?

Defendant: No.

Defendant has presented no evidence to support his belated claim that trial counsel failed to provide him with discovery or discuss trial strategies. To the contrary, the record confirms that defendant was provided discovery, as shown in the following exchange between defendant and his counsel during the guilty plea colloquy:

> Defense Counsel: And, again, you've reviewed the medical records, and you know that Mr. Diggs died due to the blow to the head from the bat, correct, that you, um that you did, correct?
>
> Defendant: Yes.

In State v. Blake, we held that a "[d]efendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." 444 N.J. Super. 285, 299 (App. Div. 2016). Here, defendant offers no explanation: he does not identify what discovery trial counsel failed to provide to him and how that missing discovery influenced his

A-1844-24

decision to plead guilty. Nor does defendant specify what strategies counsel should have employed at a trial.

We are likewise unpersuaded by defendant's bald assertion that trial counsel pressured him to plead guilty. At the plea hearing, the trial court specifically asked defendant if anyone was forcing or threatening him to give up his rights and plead guilty, to which defendant responded no.

In these circumstances, defendant has not established the grounds for an evidentiary hearing. We emphasize that PCR petitions are not fishing expeditions. See Marshall, 145 N.J. at 270 (explaining that PCR "is not a device for investigating possible claims, but a means for vindicating actual claims." (quoting People v. Gonzalez, 800 P.2d 1159, 1206 (Cal. 1990))).

We add that even were we to assume for the sake of argument that trial counsel's performance was somehow deficient, defendant has not established that he suffered prejudice. When a defendant's PCR petition challenges a guilty plea conviction, they must show that but for trial counsel's errors, they would not have pled guilty. Nunez-Valdez, 200 N.J. at 139. Here, given the strength of the State's case—consisting of video surveillance footage, multiple witnesses, and defendant's own inculpatory admission—it would not have been rational for

defendant to reject the plea. See State v. Pierre, 223 N.J. 560, 583 (2015) ("Important to the prejudice analysis is the strength of the evidence.").

That is especially true here given the favorable plea agreement, which allowed defendant to avoid the mandatory minimum thirty-year parole ineligibility sentence[6] for a murder conviction. We note that in this instance, moreover, it was defense counsel who proposed the favorable plea deal, which the State accepted.

We likewise reject defendant's contentions regarding his counsel's performance at the sentencing hearing. We emphasize that, as the PCR court recognized, defendant in his PCR petition has not specified which additional mitigating factors trial counsel should have argued for. We also agree with the PCR court that defendant has failed to establish that the mitigating factors outweighed the aggravating factors as to warrant a lesser sentence than the favorable one that counsel negotiated on defendant's behalf. Furthermore, we agree with the PCR court that because defendant has failed to establish that trial counsel rendered constitutionally ineffective assistance in any respect, the cumulative error doctrine does not apply in this case.

---

[6] If the court upon a murder conviction elects in its discretion to impose a life term, the defendant will be ineligible for parole for more that sixty-three years. See N.J.S.A. 2C:43-7.2.

A-1844-24

In sum, defendant has failed to establish a prima facie case of ineffective assistance of counsel with respect to either prong of the <u>Strickland</u>/<u>Fritz</u> test, and thus was not entitled to an evidentiary hearing, much less to vacate his guilty plea conviction.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division